UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY LAVALLIS

           Plaintiff,

v.

Oakland County Sheriff's Deputy M.
D'ANGELO, Oakland County
Sheriff's Deputy K. LINDSEY, and
Oakland County Sheriff's Deputy B.
DEVITA, in their individual
capacities,

           Defendants.

_____/

Case No. 19-10846

Mark A. Goldsmith
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**MOTION FOR SUMMARY JUDGMENT (ECF No. 25)**

## I.   PROCEDURAL HISTORY

Plaintiff Lavallis filed his complaint against defendants on March 22, 2019.
(ECF No. 1).  The defendants named on the complaint were Oakland County,
Oakland County Sheriff Michael Bouchard, Oakland County Sheriff's Deputy M.
D'Angelo (Defendant D'Angelo), Oakland County Sheriff's Deputy K. Lindsey
(Defendant Lindsey), and Oakland County Sheriff's Deputy B. Devita (Defendant
Devita) (hereinafter collectively, the Oakland County Defendants).  The Oakland
County Defendants filed their answer on April 18, 2019.  (ECF No. 5).

Discovery closed on April 13, 2020.  (ECF No. 20).  The Oakland County

Defendants filed their summary judgment motion on May 1, 2020.  (ECF Nos. 25, 26, 30).  On May 21, 2020, Plaintiff filed his response.  (ECF No. 27).  On May 28, 2020, and prior to the completion of the briefing, the parties entered into a Stipulation wherein they agreed to dismissal of all of the claims lodged against defendants Oakland County and Oakland County Sheriff Michael Bouchard, and the official capacity claims against Oakland County Sheriff's deputies D'Angelo, Lindsey and Devita.  (ECF No. 28).  On May 29, 2020, the remaining defendants–D'Angelo, Lindsey and Devita–filed their reply.  (ECF No. 29).  The summary judgment motion is fully briefed and ready for report and recommendation (ECF Nos. 25, 26, 27, 29, 30).  This matter was referred to the undersigned for all pretrial proceedings on October 22, 2020.  (ECF No. 31).

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** and that plaintiff's federal claims be **DISMISSED** with prejudice.  The undersigned further **RECOMMENDS** that the Court decline supplemental jurisdiction over the state claims.

## II.   FACTUAL BACKGROUND

A.   Plaintiff's Complaint

In his complaint, Plaintiff brought the action under Title 42, United States Code, Section 1983 and Michigan State law alleging he suffered damages as a

result of the Oakland County Defendants' violation of his Fourth Amendment rights.  (ECF No. 1, PageID.2).  Plaintiff further maintains he suffered damages from alleged "Deprivation of Civil Rights," Gross Negligence, False Imprisonment, False Arrest, Assault and Battery, Intentional Infliction of Emotional Distress and Malicious Prosecution inflicted by Defendants D'Angelo, Lindsey and Devita.  (ECF No. 1).  Plaintiff contends the violations of his rights arose out of a traffic stop effectuated by Defendants D'Angelo, Lindsey and Devita (hereinafter, the Defendant Deputies) on March 22, 2017.  (*Id.* at PageID.3).

From Plaintiff's perspective, the Defendant Deputies violated his "right to liberty protected in the substantive component of the Due Process Clause of the Fourteenth Amendment, which includes personal safety, freedom from captivity, and right to be free from the use of excessive force" and "his right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment."  (*Id.* at PageID.6).  He maintains the Defendants arrested him without probable cause in violation of his Fourth Amendment rights.  (*Id.* at PageID.9).  He contends the use of excessive force in his arrest showed deliberate indifference and was a deprivation of his constitutionally protected rights.  (*Id.* at PageID.6).  Further, he brought a malicious prosecution claim based on the resisting arrest and obstruction and operating a motor vehicle without a valid license charges filed against him.  (*Id.* at PageID.12-13).  The charges were

3

initially dismissed by the 50th District Court for the County of Oakland, but the

district court's decision was later reversed and remanded to the lower court by the

Court of Appeals of Michigan.  (*Id.*; *see also People v. Lavallis*, No. 340829, 2019

WL 1050044, at *4 (Mich. Ct. App. Mar. 5, 2019)).  Ultimately, Plaintiff pled no

contest to both charges.  (ECF No. 25-4, PageID.210).  He further alleged assault

and battery against Defendant Deputies based on their actions of striking him in

"his head, back, hips and neck" while using excessive force in effectuating the

arrest.  (ECF No. 1, PageID.4, 10, 11).  Lastly, Plaintiff alleged an intentional

infliction of emotional distress claim based on Defendant Deputies' actions which

he says qualify as "extreme and outrageous" and caused Plaintiff "severe

emotional distress."  (ECF No. 1, PageID.11-12).

B.    Factual Development

Plaintiff is a 52-year-old resident of Pontiac, Michigan.  (ECF No. 25-4,

PageID.210).  On March 22, 2017, he was operating a Chrysler Aspen when

Defendant Devita noticed Plaintiff and began following him in a marked patrol car.

(ECF No. 25-2, PageID.151).  Defendant Devita ran the vehicle's license plate

through the Michigan Law Enforcement Information Network ("LEIN")[1] and the

---

[1] Notably, Plaintiff had not committed a violation prior to Defendant Devita running a
LEIN check on the vehicle.  (ECF No. 25-2, PageID.178).  Defendant Devita agreed during the
May 2, 2017 Preliminary Examination that he "had no particular reason" to run the license plate
but was allegedly "just running license plates" as he had been trained to do in the academy.  (*Id.*
at PageID.178-79).

results revealed showed "that there was no insurance on the vehicle and the

registered owner of the vehicle had a suspended driver's license." (*Id*.).

Defendant Devita proceeded to follow the vehicle until Plaintiff pulled into a

private driveway without signaling.  (*Id*. at PageID.152).  Thereafter, Defendant

Devita parked his patrol car behind the vehicle, activated his overhead emergency

lights, which triggered the audio on his dashboard camera,[2] and initiated a traffic

stop.  (*Id*.; ECF No. 25-B).  Defendant Lindsey, who was trailing behind

Defendant Devita in a marked patrol car, parked his car behind Defendant Devita's

and also activated his overhead emergency lights before joining Defendant Devita.

(ECF No. 25-2, PageID.154).

Defendant Devita approached the driver side of the vehicle while Defendant

Lindsey proceeded to the passenger side.  (*Id*.).  Upon arriving at the driver's side

window, Defendant Devita initiated a conversation concerning the basis of the

stop.  (*Id*. at 153-54).  Specifically, Defendant Devita explained to Plaintiff the

traffic stop was initiated due to the vehicle being uninsured.  (*Id*. at PageID.153;

ECF No. 25-B at 01:19-01:20).  Plaintiff responded the car was insured.  (ECF No.

25-B at 01:20-01:22).  Defendant Devita then asked Plaintiff for his driver's

---

[2] Defendant Deputies attached as exhibits to their motion the March 22, 2017 dash
camera footage from the respective patrol vehicles of Defendants Devita and Lindsey.  (ECF No.
30).  Exhibit B is footage retrieved from Defendant Devita's forward facing dashboard camera
(ECF No. 25-B), Exhibit C is footage retrieved from Defendant Linsey's forward-facing camera
(ECF No. 25-C) and Exhibit D is footage retrieved from Defendant Devita's rear facing camera
(ECF No. 25-D).

license.  (ECF No. 25-2, PageID.153-54).  Plaintiff replied he did not have his license on him.  (*Id*.)  Defendant Devita then directed Plaintiff to step out of the vehicle.  (*Id*. at PageID.153-54; ECF No. 25-B at 01:38-01:42).  Plaintiff responded by asking why.  (*Id*.) Defendant Devita explained that Plaintiff was being placed under arrest as he was operating an uninsured vehicle and doing so without a license.  (ECF No. 25-2, PageID.153-54; ECF No. 25-B at 01:43-01:55).

Subsequently, Defendant Devita and Plaintiff engaged in a tense exchange regarding why Plaintiff was directed to exit the vehicle.  (ECF No. 25-B at 01:33-02:23).  Defendant Devita and Plaintiff at one point were speaking over one another and cutting each other off.  (*Id*.).  Further, Defendant Devita's tone became terse as he continued to respond to Plaintiff's questions about why he was instructed to exit the vehicle.  (*Id*.).  During the exchange, Plaintiff either requested or attempted to make a call on his cellphone and at one point appeared to direct his camera at Defendants Devita and Lindsey as if he were recording their actions. (ECF No. 25-2, PageID.185; ECF No. 25-B at 02:00-02:15).  Plaintiff then locked the doors of the vehicle and proceeded to close the driver side window.  (ECF No. 25-B at 02:21-02:28).

Defendant Devita attempted to open the car door but was unable to do so. (*Id*. at 02:21-02:35).  The video recording reflects Plaintiff continued to refuse to step out of the vehicle, even as Defendant Devita was banging on the driver side

window.  (*Id*.).  Defendant Lindsey then unsuccessfully attempted to break the

driver side window to gain access and Plaintiff depressed the horn and ignited the

engine of the car.  (ECF No. 25-2, PageID.185; ECF No. 25-B at 02:35-02:45).

Defendant Devita thought "[Plaintiff] was going to take off."  (ECF No. 25-2,

PageID.154).  Defendant Lindsey directed Plaintiff to exit the vehicle and

informed him he would be "tasered and it would hurt" if he failed to comply.  (*Id*.

at PageID.193; ECF No. 25-B at 02:47-02:55).  During this exchange, Defendant

Devita continued to direct Plaintiff to step out of the vehicle while banging on the

driver side window.  (ECF No. 25-B at 02:45-03:11).

Defendant Devita testified that Plaintiff then reached behind the front

passenger seat which led Defendant Devita to holster his taser, draw his issued

handgun, point it at Plaintiff and order him to keep his hands where he could see

them while continuing to order Plaintiff to step out of the car.  (*Id*. at 03:26-03:48).

Plaintiff then returned his hands to the front of the vehicle where they were visible

to Defendant Devita.  (ECF No. 25-2, PageID.155).  Defendant Devita holstered

his handgun and retrieved his taser.  (*Id*. at PageID.172).

Plaintiff continued to resist unlocking the doors or exiting the vehicle.

Defendant Lindsey retrieved his baton.  (*Id*. at PageID.155,186).  While Defendant

Devita pointed his taser, Defendant Lindsey attempted to shatter the driver side

window.  (*Id*.; ECF No. 25-B at 03:26-03:48; ECF No. 25-C at 03:43-03:56).  As

Defendants Devita and Lindsey continued in their attempt to gain access to the vehicle, Defendant D'Angelo arrived on the scene.  (ECF No. 25-B at 03:59-04:02).  After the window began to shatter, Plaintiff unlocked the door and shouted, "it's open."  (ECF No. 25-2, PageID.173; ECF No. 25-B at 04:02; ECF No. 25-C at 03:56).  Defendant Devita opened the car door and ordered Plaintiff to exit the vehicle.  (ECF No. 25-2, PageID.155; ECF No. 25-C at 04:03).  Plaintiff placed his hands in the air, but obstructed Deputies by refusing to exit the vehicle. (ECF No. 25-2, PageID.155; ECF No. 25-B at 04:03-04:08; ECF No. 25-C at 04:01-04:02).  Defendants Devita and Lindsey reached into the vehicle, and forcibly removed Plaintiff.  (ECF No. 25-2, PageID.155, 186; ECF No. 25-C at 04:02-04:04).  Defendant Devita testified that "[Plaintiff] refused to allow me to take him to the ground.  So myself and Deputy Lindsey had to forcefully take him to the ground to get him into handcuffs."  (*Id.* at PageID.155).

Once there, Plaintiff continued to evade arrest by failing to place his hands behind his back.  (ECF No. 25-2, PageID.155).  Instead, Plaintiff fell onto his stomach, then rolled onto his right side and somewhat curled into the fetal position, pulling his hands towards the center of his body, while Defendant Deputies struggled to place Plaintiff onto his stomach.  (ECF No. 25-C at 04:04-04:15). During this struggle, Deputies responded with force as Defendant Devita kicked Plaintiff once near his lower body, while Defendant D'Angelo issued two to three

knee strikes on Plaintiff's upper body and Defendant Lindsey issued two to three

knee strikes to Plaintiff's peroneal.  (ECF No. 25-2, PageID.195; ECF No. 25-C at

04:07-04:14).  At one point, while Plaintiff was lying on his right side, he offered

up his hands to Defendant Devita and said "here, here" to which Defendant Devita

responded "give me your hands" and "hands behind your back."  (ECF No. 25-C at

04:09-04:15).  Defendant Devita testified that due to Plaintiff's refusal to be placed

in handcuffs, Defendant Deputies had to forcibly place them on him.  (ECF No.

25-2, PageID.155).  Defendant Devita's dash camera also depicted that during this

altercation Plaintiff expressed he had issues with his back, his body was falling

apart and that he was in pain.  (ECF No. 25-B at 04:04-05:23).

Defendant Devita stood Plaintiff up, patted him down, walked him to the

patrol car and told him to get in the back seat.  (ECF No. 25-2, PageID.156; ECF

No. 25-C at 05:54-06:34).  At this point, Defendant Lindsey's dash camera shows

that Plaintiff's ear was bleeding.  (ECF No. 25-C at 06:31).  As Plaintiff began to

enter the patrol car, he stood and started shouting towards someone he apparently

knew.  (ECF No. 25-2, PageID.156; ECF No. 25-C at 06:43-06:48).  Defendant

Devita grabbed onto Plaintiff's head, pulled him down and pushed him into the

patrol car.  (*Id.*).  Plaintiff is overheard saying to another individual, who based on

a review of the video recording appears to be the owner of the Chrysler Aspen

Plaintiff was operating, "Bill, they beat the sh** out of me."  (ECF No. 25-B at

08:02-08:08).  As heard on the video recording, Plaintiff continued to ask why he was being arrested and complained of back pain.  (ECF No. 25-B at 06:13-06:51).

Approximately 10 to12 minutes after Plaintiff was placed in the car, Defendant Devita entered the driver side of his patrol car and asked Plaintiff for his personal information (*i.e.*, name, address, etc.) which Plaintiff provided.  (*Id.* at 19:06-20:33; ECF No. 25-D at 00:33-01:00).  As shown on the video recording, Plaintiff stated he did not want to exit the Aspen because he panicked and was scared.  (ECF No. 25-B at 19:36-19:50).  He eventually apologized and he "was wrong."  (*Id.* at 22:15-22:28; ECF No. 25-D at 00:08-00:16).  Plaintiff expressed he was concerned the officers were "on the hunt" for him as he had a Friend of the Court (FOC) warrant out for his arrest.  (*Id.*).  Defendant Devita ran Plaintiff's name through the LEIN system and the results showed that Plaintiff (i) did not have a valid driver's license and (ii) had an FOC warrant.  (ECF No. 25-B at 19:06-20:33).

Plaintiff was ultimately charged with Resisting and Obstructing a Police Officer pursuant to M.C.L. § 750.81(d)(1) and operating a motor vehicle without a valid license pursuant to M.C.L. § 257.301(1).  (ECF No. 25-4, PageID.210).  Plaintiff pleaded "no contest" to both offenses on October 1, 2019.  (*Id.*).

## III.   ANALYSIS AND CONCLUSION

### A.   Legal Standards

1.      Summary Judgment Motion

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In essence, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or

other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson,* 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). When reviewing the facts, the Court "must view the factual evidence and draw all reasonable inferences in favor of the non-moving party."  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).  However, mere allegations or denials in the nonmovant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson,* 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson,* 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case.  *Id.* at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence.  *See id.* at 252-53.  Finally, if the nonmoving party

12

fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

2.      Qualified Immunity

The Supreme Court has stated "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This legal concept is generally referred to as qualified immunity.

The Supreme Court has established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). One part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id.* If this question was resolved

13

in the affirmative, then the court would decide "whether the right was clearly established." *Id.* If both questions are resolved in the affirmative, then the doctrine of qualified immunity would not apply, and the case could proceed. Conversely, if the answer to either question is no, then qualified immunity obtains. The court may consider the questions in whichever order makes the most sense dependent on the facts of the case. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). Generally under the second prong of this analysis, "[a] right is clearly established if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hearring v. Sliwowski*, 712 F.3d 275, 279 (6th Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (citing *Grawey v. Drury*, 567 F.3d 302, 313 (6th Cir. 2009)). "While there need not be 'a case directly on point' for the law to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Barton v. Martin*, 2020 WL 595981, at *4 (6th Cir. 2020)(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "When a defendant invokes qualified immunity in a motion for summary judgement, the plaintiff must offer sufficient evidence to create a genuine dispute of fact that the defendant violated a clearly established right." *Folks v. Petit*, 676 F. App'x. 567, 569 (6th Cir. 2017) (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608-09 (6th Cir. 2015)).

B.    <u>Insufficiency of Plaintiff's Response</u>

Plaintiff's response to Defendant Deputies' motion for summary judgment has presented the Court with a difficult task as it falls well below the standard of adequately addressing the issues and arguments raised in Defendant Deputies' brief.  First, the response references the standard for deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and proceeds to respond to a 12(b)(6) dispositive motion which is improper here as Defendant Deputies have filed a summary judgment motion under Rule 56.  (ECF No. 27).  While Defendant Deputies' brief fails to include either the legal standard for summary judgment or a reference to Federal Rule of Civil Procedure 56, the timing (*i.e.*, filed after the close of discovery), title (*i.e.,* "Defendants D'Angelo, Lindsey, and Devita's Motion for Summary Judgment & Brief in Support"), and structure and substance (*e.g.*, inclusion of the statement of material facts not in dispute) of the motion shows that Defendants are moving for summary judgment on all of the claims including the Fourteenth Amendment equal protection claim as further discussed below.  (ECF No. 25).  Further, the title of Plaintiff's response–"Plaintiff's Response to Defendant's Motion for Summary Judgment"–underscores the fact that Defendants are seeking summary judgment and that Plaintiff at one point deduced as much.

Second, Plaintiff's response is insufficient as he failed to include citations to "specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown*, 329 F. Supp. 2d at 910 (6th Cir. 2004).  In fact, it appears Plaintiff solely relies upon his pleadings to respond to Defendant Deputies' motion for summary judgment.[3] (ECF No. 27).  Aside from fleeting references to the Defendant Deputies' patrol car dash camera footage and two minor references to the May 2, 2017 preliminary examination transcript, Plaintiff's entire response is riddled with instances where he references and relies solely on the allegations included in his pleadings.  (ECF No. 27).  The failure to include citations to documentary evidence is likely the result of Plaintiff's use of the incorrect legal standard when preparing his response.

Plaintiff's response is devoid of relevant evidence and fails to address the arguments raised in Defendant Deputies' motion for summary judgment.  (*Id.*).  Such an approach is impermissible and most importantly insufficient under Federal Rule of Civil Procedure 56(e).  *Sawyer v. Memphis Educ.*, 2014 WL 12531099, at *3 (W.D. Tenn. July 7, 2014).

---

[3] For example, Plaintiff maintains the Court should not dismiss his case as "the level of brutality **as set forth in Plaintiff's Complaint** was realistically far more excessive then necessary under the circumstances, thus vacating any claims of qualified immunity by the Defendant officers."  (ECF No. 27, PageID.223-24) (emphasis added).  This argument, however, failed to include references or citations to evidence in the record to support the argument.

In sum, in light of the information outlined hereinabove, it was inappropriate for Plaintiff to respond to Defendant's motion using the incorrect standard for review.  Nevertheless, the Court will review Defendant Deputies' motion as a motion filed under Federal Rule of Civil Procedure 56.

### C.    Undisputed Factual Record

In cases where the responding party fails to proffer evidence to supports its claims "the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'"  *Faryen v. United Machining Inc.*, 2016 WL 5106975, at *4 (E.D. Mich. Aug. 16, 2016) (quoting *Barnes v. SRI Surgical Exp., Inc*. 2012 WL 1059935, at *3 (E.D. Tenn. Mar. 28, 2012)).  If the proffered evidence supports a conclusion there is no genuine issue of material fact, the court will determine that the moving party has carried its burden, and "judgment shall be rendered forthwith."  *Id*. (alteration omitted); s*ee also Norris v. Aryers*, 2016 WL 706238, at *2 (E.D. Tenn. Feb. 22, 2016); *Snyder v. Chrysler Grp., LLC*, 2016 WL 3213388, at *3 (E.D. Mich. June 10, 2016) ("If an opposing party fails to properly address the factual assertions of the moving party, the court may 'consider the facts undisputed for the purposes of the motion' and 'grant summary judgment if the

motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it.'") (quoting Fed. R. Civ. P. 56(e)).

Federal Rule Civil Procedure 56(e) "mandates summary judgment against a party who fails to establish the existence of an essential element of the parties [sic] case on which that party bears the burden of proof at trial." *See King v. Trott and Trott P.C.*, 2008 WL 2063555, at *1 (E.D. Mich. Mar. 28, 2008) (citing *Celotex Corp.*, 477 U.S. at 322-23).  Using the factors outlined above, the undersigned will analyze the undisputed facts as set forth in Defendant Deputies' summary judgment motion and assess whether Plaintiff has established the existence of the necessary elements of his respective causes of action.

D.  <u>Defendants Have Met Their Initial Summary Judgment Burden</u>

1.  Equal Protection Claim (Count I)

Although Defendant Deputies' motion is labeled a motion for summary judgment, the section of the brief regarding claims arising from an alleged violation of the Equal Protection Clause of the Fourteenth Amendment, specifically the §1983 Excessive Force and Unlawful Search and Seizure claims, appears to seek a dismissal of the claim under Federal Rule of Civil Procedure 12(b)(6)–Failure to State a Claim–as this portion of the brief solely references the pleadings and provides no supporting evidence from the record as required by Rule 56.  (ECF No. 25, PageID.132-33); *supra* Section III.B.  Despite the lack of

references to the evidentiary record or Rule 56, for that matter, based on the factors discussed in Section III.B (*i.e.*, the timing, title, and structure and substance of the motion) the Court will review Defendants Deputies' request to dismiss Plaintiff's Equal Protection Claim under the Rule 56 standard.

"The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination by the government that 'burdens a fundamental right, targets a suspect class, or intentionally treats one differentially than others similarly situated without any rational basis for the difference.'" *Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 971 (E.D. Mich. 2016). Plaintiff alleges Defendant Deputies violated his "right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment" and nothing more. (ECF No. 1, PageID.6). Plaintiff does not maintain he is a member of a suspect class. Nor does Plaintiff explain how Defendant Deputies intentionally treated him differently than similarly situated individuals. Even after construing the information available to the Court regarding the Equal Protection claim, *i.e.*, Plaintiff's complaint and response to Defendant's Motion for Summary, in the light most favorable to Plaintiff, the undersigned was unable to identify any allegations or statements beyond the general statement that Plaintiff's "right to fair and equal treatment" was violated to support his constitutional claim. (*See id.*; *McInnis v. Township of West Bloomfield*, 2018 WL 7048466 at, *2-*3 (E.D. Mich.

19

Nov. 16, 2018) ("The Court 'views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party.").

"The Sixth Circuit has repeatedly recognized that disparate treatment is a threshold requirement of an equal-protection violation." *Gohl v. Livonia Pub. Sch.*, 134 F. Supp. 3d 1066, 1088 (E.D. Mich. 2015). In this case, Plaintiff bears the burden of showing that Defendant Deputies intentionally treated him differently from similarly situated individuals. *Id.* The Court does not require an "'exact correlation' when evaluating whether parties are similarly situated but, rather, demands only 'relevant' similarity." *Id.* In instances where "it is clear that no reasonable jury could find that the similarly situated requirement has been met" a district court may grant summary judgment. *Id.* Further, "[t]he Sixth Circuit does not hesitate to affirm a grant of summary judgment where a plaintiff fails to identify other similarly situated individuals." *Id.*

Plaintiff does nothing more than include an unsupported conclusory statement in his complaint that "his right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment" was violated. (ECF No. 1, PageID.6). The inclusion of this statement, without more, is insufficient to support his Equal Protection claim. *Gohl*, 134 F. Supp. 3d at 1089; *Hall v. Callahan*, 727 F.3d 450, 457 (6th Cir. 2013) ("In making an equal protection challenge, the plaintiff must demonstrate that a discrimination of some

substance has occurred which has not occurred against other individuals who were similarly situated.").

Having reviewed the relevant portions of the pleadings and briefing, the undersigned finds that Plaintiff has failed to establish there is a genuine dispute as to any material fact as the record is bereft of information or evidence to show (i) how Defendant Deputies burdened a fundamental right of Plaintiff's, (ii) that Plaintiff was a member of a suspect class, (iii) that Defendant Deputies targeted said suspect class, or (iv) that Defendant Deputies intentionally treated Plaintiff differentially than others similarly situated without any rational basis for the difference.  Therefore, the undersigned recommends the Equal Protection claim be dismissed.

2.    § 1983 Excessive Force Claim (Count I)

Excessive force claims may be brought under the Fourth Amendment, Eight Amendment or Fourteenth Amendment.  *Phelps v. Coy.*, 286 F.3d 295, 299 (6th Cir. 2020).  "Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted, prisoner, or something in between."  *See id*. (quoting *Gravely v. Madden*, 142 F.3d 345, 348-49 (6th Cir. 1998)).  If the incident involved a free citizen and "the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard."  *Id*. (citing *Graham v.*

21

*Connor*, 490 U.S. 386, 395 (1989)).  This standard "requires that the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure."  *Id*. (citing *Graham*, 490 U.S. at 396).  If the force occurs when the plaintiff is a convicted prisoner, the Eight Amendment sets the standard for the claim.  *Id*. (citing *Graham*, 490 U.S. at 395, n. 10).  "Finally, if a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eight Amendments, the more generally applicable due process clause of the Fourteenth Amendment still provides the individual some protection against physical abuse by officials."  *Id*. at 300 (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001)).  The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment."  *Id*. (citing *Graham*, 490 U.S. at 395, n. 10).

Plaintiff raises an excessive force claim in his complaint and alleges that Defendant Deputies violated his right to (i) personal safety, (ii) be free from captivity and (iii) be free from the use of excessive force as "protected in the *substantive component of the Due Process Clause of the Fourteenth Amendment*." (ECF No. 1, PageID.6) (emphasis added).  However, as the alleged excessive force occurred during an arrest, at which time Plaintiff was a free citizen, the Fourth, not Fourteenth, Amendment applies.  *Phelps*, 286 F.3d at 299; *see also Graham*, 490

22

U.S. at 395 (holding that claims alleging police officers have used excessive force during the course of an arrest, investigatory stop, or some other form of a seizure of a free citizen are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard."). Therefore, the Court will examine Plaintiff's excessive force claims under the Fourth Amendment objective reasonableness standard.

The reasonableness test under the Fourth Amendment "is not capable of precise definition or mechanical application." *Graham*, 490 U.S. at 395 (internal quotations omitted). "[H]owever, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal citations omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation." *Id.* at 387. Under this standard, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" will qualify as a violation of the Fourth Amendment. *Id.* at 396.

The Supreme Court has "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.*   In circumstances where a citizen is resisting arrest, police officers may use force to subdue the individual in order to effectuate the arrest. *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015).  Moreover, the Sixth Circuit has held that officials are entitled to qualified immunity in the face of excessive force allegations even when the plaintiff "was suspected of relatively minor crimes" if the plaintiff resisted and the officials responded with force. *See Wysong v. City of Heath,* 2008 WL 185798, at *6-7 (6th Cir. Jan. 22, 2008).

Plaintiff alleges the actions taken and force exerted by Defendant Deputies during the March 22, 2017 incident were excessive, while Defendant Deputies counter by maintaining their actions are protected by qualified immunity.  (ECF No. 25, PageID.133-140).  As this case involves multiple defendants, each respective "defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).  The evidence presented to the Court is composed of the Defendant Deputies' respective dash camera footage[4] and the preliminary examination transcripts.  (ECF No. 25-2, 25-

---

[4] As dashboard camera of the incident is available in this case, the Court will rely mainly on the undisputed video footage but will adopt the plaintiff's version of any facts not caught on camera. *See Ashford v. Raby*, 951 F.3d 798, 799 (6th Cir. 2020); *see also Scott v. Harris*, 550

B, 25-C, 25-D).  The Court will analyze Plaintiff's excessive force claim reviewing

the information included in the aforementioned evidence in the light most

favorable to the nonmovant, *i.e.*, Plaintiff.

          a.    *Defendant Lindsey's Use of a Baton to Break the Window*

Officer Devita's dash camera footage shows that Plaintiff refused to exit the

vehicle after Defendant Devita made several requests for him to do so. (ECF No.

25-B at 01:35-03:11).  Instead of exiting the vehicle, Plaintiff closed his window

and locked the car door.  (*Id.* at 02:21-02:28 and 02:35-02:45; ECF No. 25-2,

PageID.185).  These actions led to Defendant Lindsey attempting to break the

driver side window.  (*Id.*).  Plaintiff, in response, depressed his horn and ignited the

engine of the vehicle.  (ECF No. 25-B at 02:35-02:45; ECF No. 25-2 at 185).

Based on Plaintiff's actions, Defendant Devita thought Plaintiff was attempting to

leave the scene in his vehicle.  (ECF No. 25-2, PageID.154).  Subsequently,

Defendant Lindsey retrieved his baton and utilized it to attempt to break the

window in an effort to prevent Plaintiff from "taking off" and evading arrest.  (*Id.*

at PageID.185, 186; ECF No. 25-B at 03:26-03:48; ECF No. 25-C at 03:43-03:56).

After the window began to shatter, Plaintiff unlocked the door and shouted, "it's

open."  (ECF No. 25-B at 04:02; ECF No. 25-C at 03:56).

The facts regarding Plaintiff's refusal to exit the vehicle as outlined above

---

U.S. 372, 378-80 (2007).

are analogous to those found in *EL v. City of Taylor*, 2015 WL 7180472 (E.D.

Mich. Nov. 16, 2015).  In *EL*, during a traffic stop, plaintiff refused to provide

officers with his driver's license, registration, and proof of insurance.  *Id.* at *1.

Officers then asked plaintiff to step out of the vehicle and in response he locked the

car door instead.  *Id.* at *2.  Officers proceeded to break open the driver side

window with a baton but ultimately removed plaintiff from the passenger side of

the vehicle.  *Id.*  Later, while struggling on the ground to handcuff El, an officer

struck him in the face with a closed fist.  *Id.*  Once the arrest was effectuated,

officers performed a LEIN check which showed that EL's license was suspended,

the vehicle plates were expired and there was an outstanding warrant for his arrest.

*Id.*  The court found El obstructed the officers by refusing to provide the requested

information and refusing to exit the vehicle and held that under Sixth Circuit

precedent, "the factors present in [the] case weighed in favor of the reasonableness

of the officers' use of force."  *Id*. at *3.

In light of *EL*, the facts in this case do not support Plaintiff's claim that

Defendant Lindsey's actions in attempting to break the window constitute

excessive force.  *Id.*  Similar to *EL*, prior to exerting any force, both Defendants

Lindsey and Devita directed Plaintiff to unlock the door and step out of the vehicle.

(ECF No. 25-B at 01:35-03:11); *EL*, 2015 WL 7180472, at *1.  Instead of heeding

their directive, Plaintiff appeared recalcitrant and proceeded to lock the car doors

and close the window. (ECF No. 25-B at 02:21-02:45); *EL,* 2015 WL 7180472, at

*1. Notably, in this case, Plaintiff took two additional steps which were more

aggressive than those taken by the arrestee in *EL*. First, before Defendant Lindsey

began the use of his baton, Plaintiff started moving around the vehicle which

resulted in Defendant Devita being unable to see his hands. (ECF No. 25-B at

02:21-02:45). Second, Plaintiff ignited the engine of the vehicle he occupied.

(*Id.*). Based on Plaintiff's actions, Deputies were unable to discern threats Plaintiff

may pose, what his intentions were and what his next actions would be. Therefore,

it was reasonable for Defendant Deputies to conclude Plaintiff may have a weapon

in the vehicle, or may use the vehicle as a weapon and create a danger to

Defendant Deputies and those in the surrounding area. *Dunn v. Matatall*, 549 F.3d

348, 354 (holding that it was reasonable for the police officers to be apprehensive

that plaintiff who refused to exit vehicle after being commanded to do so may have

a weapon in the vehicle or that the car may be used as a weapon); *see also Ashford*,

951 F.3d at 802 (it was reasonable for officers to question the suspect's intentions

based on his prior actions of refusing a lawful signal to pull over, stopping only

when forced to and leaving his vehicle in drive during the stop). In order to

prevent Plaintiff from "taking off" and to effectuate the arrest, Defendant Lindsey

used the baton in an attempt to shatter the vehicle's window. (ECF No. 25-B at

03:26-03:48; ECF No. 25-C at 03:43-03:56). Plaintiff unlocked the door and

stated that it was open, Defendant Lindsey ceased his endeavor of shattering the vehicle's window. Defendant Lindsey's restraint indicated the force exerted by him was slightly measured as once the potential threat of Plaintiff "taking off" began to dissipate, he stopped using the baton. *Ashford*, 951 F.3d at 804 ("the footage shows that [defendant's] handling of [the police dog] during the seizure was responsible and professional."). Under the circumstances, Defendant Lindsey's behavior was objectively reasonable and he is entitled to qualified immunity. *EL*, 2015 WL 7180472, at *3.

b. *Removal of Plaintiff from Vehicle*

We now focus on the removal of Plaintiff from the vehicle by Defendants Devita and Lindsey. After Plaintiff informed Defendants Devita and Lindsey the car door was unlocked, Defendant Devita opened the door and ordered Plaintiff to exit the vehicle. (ECF No. 25-2, PageID.155; ECF No. 25-C at 04:03). While Plaintiff did raise his hands, he continued to obstruct Defendants by not exiting the vehicle. (ECF No. 25-2, PageID.155; ECF No. 25-B at 04:03-04:08; ECF No. 25-C at 04:01-04:02). Defendants Devita and Lindsey then reached into the vehicle, and forcibly removed him. (ECF No. 25-2, PageID.155, 186; ECF No. 25-C at 04:02-04:04). Defendant Devita testified that "[Plaintiff] refused to allow me to take him to the ground. So myself and Deputy Lindsey had to forcefully take him to the ground to get him into handcuffs." (*Id.* at PageID.155).

The facts regarding Plaintiff's refusal to exit the vehicle as outlined above are analogous to those of *Ashford*, 951 F.3d 798. In *Ashford*, during a stop plaintiff complied with the officer's order to show his hands but failed to turn his car engine off after being directed to do so. *Id.* at 800. Defendant approached the vehicle with his trained dog, Ruger, unlocked the car door and directed plaintiff to exit the vehicle. *Id.* Despite being instructed to exit the vehicle, plaintiff did not do so because his car was still in drive and his foot was on the brake. *Id.* Plaintiff was afraid to release his foot from the brake but was also afraid to retract his hand into the vehicle as he believed by doing so the "officers would think he was reaching for a weapon and would shoot him." *Id.* Defendant warned plaintiff that if he did not exit the vehicle, Ruger would be sent to apprehend him. *Id.* Following continued refusal to exit the vehicle, defendant commanded Ruger to attack. *Id.* Defendant and Ruger then pulled plaintiff out of the vehicle and onto the road. *Id.* The Sixth Circuit held that although plaintiff was not making any aggressive moves "(1) the officers could not control the scene with [plaintiff] in the vehicle and (2) [plaintiff] was refusing to exit the vehicle." *Id.* at 802. Under the circumstances at hand, defendant had no choice but to remove plaintiff from the vehicle as the alternative options (*i.e.*, to reach into the vehicle, shift the car into park and remove the keys as suggested by plaintiff at the time of the incident), from the perspective of a reasonable police officer, were riskier and could have

placed the officers in danger. *Id.* The Sixth Circuit held: (1) it was reasonable for defendant to use force to remove plaintiff from the vehicle, (2) it was reasonable for defendant to deploy Ruger to perform the seizure and (3) defendant reasonably managed Ruger during the seizure. *Id.* at 801-04. Defendant's actions did not violate the plaintiff's Fourth Amendment rights. *Id.* at 804. In sum, the Sixth Circuit held "nothing about [defendant's] use of Ruger to seize plaintiff violated clearly established law. Thus, [defendant was] entitled to qualified immunity." *Id.*

In the case at bar, prior to unlocking the door, Plaintiff was uncooperative and did not follow the commands issued by Defendants Devita and Lindsey. (ECF No. 25-B at 02:08-02:45). Even after the door was unlocked, Plaintiff was reluctant to leave the vehicle. (*Id.*). Based on Plaintiff's continued refusal, Deputies Devita and Lindsay's decision to forcibly remove Plaintiff from the vehicle was reasonable. From Defendant Deputies' perspective, they needed to secure the scene and prevent Plaintiff from becoming a runaway driver. (ECF No. 25-2, PageID.186-187). *See Ashford*, 951 F.3d at 802 (finding defendant had little choice but to remove plaintiff as he could not control the scene while plaintiff was in the vehicle and plaintiff was refusing to exit the vehicle); *see also Dunn*, 549 F.3d at 354-55 (finding that although plaintiff's statements may have indicated that he finally decided to exit the vehicle, "only seconds elapsed between the time the seatbelt was unfastened and when [plaintiff] was pulled out of the car, giving the

Officers little opportunity to fully comprehend whether [plaintiff] had finally decided to become compliant.").  In light of Plaintiff's actions, as exhibited by the dash camera footage, it was reasonable for Defendants Devita and Lindsey to use a method necessary in order to secure Plaintiff and effectuate the arrest.  *Rudlaff*, 791 F.3d at 639 (holding that in circumstances where a citizen is resisting arrest, police officers may use force to subdue the individual in order to effectuate the arrest); *see also Ashford*, 951 F.3d at 802; *see also Dunn*, 549 F.3d at 354-55.

Based on the record and the current state of the law, Defendants Devita and Lindsey's actions were objectively reasonable, and they did not violate Plaintiff's constitutional rights when they used force to remove him from the vehicle and effectuate the arrest.  Therefore, Defendants Devita and Lindsey are entitled to qualified immunity.

c.    *Strikes Administered During Arrest*

Based on the dash camera footage, the force exerted by Defendant Deputies to subdue Plaintiff while attempting to arrest him, does not rise to a level sufficient to qualify as violating Plaintiff's constitutional right.  The video recording depicts that following Plaintiff's removal from the vehicle, he continued to obstruct the Deputies by preventing them from handcuffing him.  (ECF No. 25-2, PageID.155; ECF No. 25-C at 04:04-04:15).  Based on the video recording, during an approximate 10-second time frame, Defendant Deputies administered several

31

strikes to Plaintiff's body to subdue him.  (ECF No. 25-2, PageID.195; ECF No. 25-C at 04:07-04:14).  The strikes administered by Defendant Deputies ceased once Plaintiff was secured.  (ECF No. 25-C at 04:13).

Plaintiff argues that Defendant Deputies are not entitled to qualified immunity for the actions taken by them–*i.e.*, kicking, kneeing and striking Plaintiff in his head, back, hips and neck[5]–and that the actions were "far more excessive then [sic] necessary under the circumstances. . . ."  (ECF No. 27, PageID.224).  Plaintiff failed to proffer evidence to support this contention but instead alleged that the dash camera footage does not "capture the extent of force visited upon Plaintiff during the course of said arrest" and "as such, it is patently unfair for this Court to be called upon to surmise or otherwise speculate, without clear evidence on the video, as to what truly occurred."  (*Id*. at 222).  However, the argument is baseless as Defendant Lindsey's front facing dash camera footage provides a clear and unobstructed view of Plaintiff's removal from the vehicle up until he was placed in handcuffs.  (ECF No. 25-C at 04:01-04:15).

*Assuming arguendo*, even if the struggle between Plaintiff and Defendant Deputies was not captured by the dash camera footage, this argument advanced without support would be insufficient to defeat Defendant Deputies' motion for

---

[5]  Based on the dash camera footage, during the struggle Plaintiff was not struck in the head and/or neck.

summary judgment.  Arguing that evidence is allegedly absent from the record is not equivalent to putting forth evidence upon which the jury could review and reasonably find in plaintiff's favor.  *Brown*, 329 F. Supp. 2d at 910.  Plaintiff must make an *affirmative showing* with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Id.*  Plaintiff has not offered any testimony, affidavits from individuals who witnessed the incident, or medical records to support that the force used by Defendant Deputies was excessive.

Comparatively, Defendant Deputies proffered both dash camera footage and testimony outlining the events that occurred.  Once removed from the vehicle, Plaintiff continued to rebuff the efforts of the Deputies to place him in handcuffs. (ECF No. 25-2, PageID.155).  The Court takes note that at one point Plaintiff did offer his hands to Defendant Devita and stated "here, here" to which Defendant Devita responded "give me your hands" and "put your hands behind your back." (ECF No. 25-C at 04:09-04:15).  In isolation, it appears Plaintiff was attempting to comply with Defendant Devita's instructions, but this gesture alone was not enough to expunge Plaintiff's earlier acts of resistance.  Further, Defendant Deputies had not had an opportunity to pat Plaintiff down and ensure that there were no weapons on his person.  Thus, it was reasonable for Defendants Lindsey

and D'Angelo to continue to administer strikes in order to secure Plaintiff's hands as Plaintiff's true intention were still unknown.  (*Id.*).  Once Plaintiff was secure, the strikes stopped and Defendant Devita double locked the cuffs "so they [didn't] tighten up on [Plaintiff], [in an effort to try] to be respectful for the tightness of the cuffs so [Plaintiff was] not uncomfortable."  (*Id.* at 176.)

The facts outlined above are analogous to those of *Rudlaff*.  791 F.3d 638.  In *Rudlaff*, while attempting to effectuate an arrest the suspect resisted and refused to be handcuffed.  *Id*. at 639.  While Officer Gillispie attempted to handcuff the suspect, he swung his arms in Officer Gillispie's direction in attempt to resist being handcuffed.  *Id.* at 640.  Despite being told at least twice to give his hands to Officer Gillispie, the suspect did not comply and instead he "ball[ed] up."  *Id.*  The officers then used force–Officer Gillispie used a knee strike and the other used a taser–to subdue the suspect during his arrest.  *Id.*  The taser was administered after the issuance of the knee strike was unsuccessful in subduing the suspect.  *Id.*  In that case, in light of the use of both a knee strike and a taser the Sixth Circuit held that "[w]hen an arrestee actively resists arrest like [the suspect] did, the police can constitutionally use a taser or a knee strike to subdue him."  *Id.*; *see also Thomas v. City of Eastpointe*, 715 F. App'x 458, 460 (6th Cir. 2017) ("A suspect actively resists arrest when he 'physically struggles with police, threatens or disobeys officers, or refuses to be handcuffed.") (citing *Cockrell v. City of Cincinnati*, 468

34

F. App'x 491, 495-46 (6th Cir. 2012)).

Based on these facts and the current state of the law, Plaintiff failed to show that Defendant Deputies violated his Fourth Amendment constitutional right and thus Defendant Deputies are entitled to qualified immunity.

        3.      Section 1983 Unlawful Search and Seizure Claim (Count I)

Plaintiff alleges that Defendant Deputies violated his rights by conducting an "illegal search of his vehicle." (ECF No. 1, PageID.6). He provides no further details or evidence to substantiate this claim. Since Plaintiff provided no explanation or evidence as to how this search came about or was conducted aside from the statement that "[Defendant Deputies] acting under color of state law, took Plaintiff into physical police custody, after finding a gun due to an illegal search of his vehicle" Defendants construed the search to be that of an inventory search and will analyze it as such. (ECF No. 25, PageID.140). If Plaintiff's unlawful search claim does not involve that of an inventory search, the claim still fails as Plaintiff has not met his burden of demonstrating that summary judgment should not be granted on this claim as the record is devoid of any factual development or evidence upon which a jury could find in his favor. Nevertheless, the Court will rely upon the available dash camera footage to analyze Plaintiff's claim.

It is important to ensure the record is accurate and that the facts regarding the search of the vehicle are correct. Based on Defendants Devita and Lindsey's

respective dash camera footage, Plaintiff was not the registered owner of the vehicle he was operating at the time of the arrest, but instead borrowed it from a neighbor (ECF No. 25-B at 08:02-08:08). Further, a gun was not found in the vehicle during Defendant Devita's search. (*See generally* ECF No. 25-C and ECF No. 25-4, PageID.210). Plaintiff was arrested for driving an uninsured vehicle without a license and for resisting arrest. (ECF No. 25-4, PageID.210).

In their motion for summary judgment, Defendants assumed the search complained of was an inventory search as "Plaintiff [did] not allege any facts to explain the basis for his unlawful search claim. . . ." (ECF No. 25, PageId.140). "[L]aw enforcement officials may make a warrantless inventory search of a legitimately seized vehicle, provided that the property inventory is conducted according to standardized criteria or an established routine." *United States v. Ballard*, 2011 WL 3319431, at *2 (6th Cir. Aug. 3, 2011). The searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *See id.* "An inventory search is a recognized exception to the Fourth Amendment's warrant requirement. . .". *United States v. Alexander*, 954 F.3d 910, 915 (6th Cir. 2020). Thus, the inventory search conducted by Defendant Devita following the decision to impound the vehicle was not unlawful as it is a recognized exception to the Fourth Amendment's warrant requirement. *Id.*

The undersigned recommends that this claim be dismissed as Plaintiff provided neither case law nor evidence to support his allegation that the search was illegal or that anything was seized from within the vehicle.  (*See generally* ECF No. 1 and ECF No. 27).

### 4.       False Imprisonment/False Arrest (Count III)

On October 1, 2019, Plaintiff pleaded no contest to Michigan Penal Code 750-81d – Assaulting, battering, resisting, obstructing, opposing person performing duty (M.C.L. § 750.81d (2002)) and Michigan Vehicle Code Section 257.301 – Valid operator's or chauffeur's license required (M.C.L. § 257.301 (2011)).  (ECF No. 25-4, PageID.210).  In order for Plaintiff's false imprisonment and false arrest claims to proceed, the Court "would have to find that [Defendant Devita] lacked probable cause to arrest and imprison Plaintiff [Lavallis]," a finding which would necessarily imply the invalidity of Plaintiff's no contest plea to the violation of M.C.L § 257.301 in the lower court.  (ECF No. 25-4).  *Baron v. Priest*, 2008 WL 4372637, at *4 (E.D. Mich. Sept. 19, 2008) (explaining that similar to *Schreiber v. Moe*, 445 F. Supp. 2d 799 (W.D. Mich. 2006) plaintiff's civil rights claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), stating "Section 1983 plaintiffs are barred from advancing claims that, if successful, would necessarily imply the invalidity of a prior criminal conviction, or sentence" (internal quotations omitted)).

Plaintiff argues that "[t]he 'Horay' [6] [sic] principle" followed in the cases cited by Defendant Deputies is inapplicable as it relates to "the principle that civil tort actions are not appropriate vehicles for challenging the validity of *outstanding criminal judgments*." (ECF No. 27, PageID.221) (emphasis added). The Court disagrees with Plaintiff's position as no such distinction between "outstanding criminal judgments" and "convictions" is outlined in *Heck*. 512 U.S. 477 (1994). Further, finding in Plaintiff's favor on the False Imprisonment/False Arrest claims would necessarily imply the invalidity of Plaintiff's no contest plea in the lower court to the violation of M.C.L § 257.301 and thus violate *Heck*. *Id.* Therefore, the undersigned recommends granting Defendant Deputies summary judgment on Plaintiff's False Arrest/False Imprisonment claims.

### 5.    Malicious Prosecution Claim (Count VI)

Malicious prosecution claims can be brought under either federal or state law. *See Thacker v. City of Columbus*, 328 F.3d 244, 258-59 (6th Cir. 2003). It is not clear based on Plaintiff's complaint whether he intended to bring this cause of action as a state or federal claim. In this section, we will address the cause of

---

[6] Based on the parties' briefing, specifically the discussion included in the section of Plaintiff's brief which discusses Plaintiff's no contest plea (ECF No. 27, PageID.221-22), the Court deduces that the "'Horay [sic]' principle" Plaintiff referred to is the principle outlined in *Heck* that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." 512 U.S. at 486.

action as a federal claim and address the cause of action as a state-law claim in Section III.D.6.

Plaintiff's federal malicious prosecution cause of action is barred by the *Heck* principle which states that "civil tort actions are no appropriate vehicles for challenging the validity of outstanding criminal judgments . . ." as the claim requires the plaintiff to prove the unlawfulness of his conviction or confinement. *Heck*, 512 U.S. at 486; *see also Hann v. Michigan*, 2007 WL 892414, at *4 (E.D. Mich. Mar. 4, 2007) (holding that plaintiff's malicious prosecution claim was barred by *Heck* as that was "the precise type of claim which the Court considered in *Heck* to necessarily imply the invalidity of an underlying conviction."). Notably, in his response Plaintiff failed to address Defendant Deputies' argument that the malicious prosecution claim be dismissed as Plaintiff has been convicted of the underlying offense.  (ECF No. 25, PageID.141; ECF No. 27).  Defendant Devita's dash camera footage depicts that the claims Plaintiff ultimately pleaded no contest to were substantiated by his own admissions and actions during the stop. Accordingly, Plaintiff's malicious prosecution claim should be dismissed as it is unsupported by the record and barred by *Heck* and Defendant Deputies' summary judgment should be granted as they have met their burden.

        6.    Gross Negligence (Count II), Assault and Battery (Count IV), Intentional Infliction of Emotional Distress (Count V), and Malicious Prosecution (Count VI)

Plaintiff has also alleged state-law claims for Gross Negligence (Count II), Assault and Battery (Count IV) and Intentional Infliction of Emotional Distress (Count V).  Plaintiff also alleged a claim for Malicious Prosecution (Count VI), but it is not clear whether the claim is alleged under federal or state law as discussed above and thus the Court will address the state law Malicious Prosecution claim in this section as well.  Where, as here, the court has "dismissed all claims over which it has original jurisdiction," the Sixth Circuit has repeatedly advised that the district courts should not exercise supplemental jurisdiction over state law claims.  *See*, *e.g.*, *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008). Therefore, the court should decline supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(c).  Counts II, IV, V and VI should be  dismissed without prejudice.

## IV.   RECOMMENDATION

For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant Deputies' motion for summary judgment be **GRANTED** and that plaintiff's federal claims be **DISMISSED** with prejudice.  The undersigned further **RECOMMENDS** that the Court decline supplemental jurisdiction over the state claims.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Date: January 19, 2021     s/Curtis Ivy, Jr.
              Curtis Ivy, Jr.
              United States Magistrate Judge